The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

N. Maxine GATEWOOD, Administratrix, with Will Annexed of the Estate of John J. Gatewood, Deceased, Appellant.

The Citizens Bank, Trustee under the Will of John J. Gatewood, Deceased, and Clarene Ware, Respondents.

No. 46551.

Supreme Court of Missouri,

Division No. 1.

Nov. 10, 1958.

Neale, Newman, Bradshaw, Freeman & Neale, Flavius B. Freeman, Donald J. Hoy, Springfield, for appellant.

Fred A. Moon, Springfield, for respondent The Citizens Bank, Trustee under the will of John J. Gatewood, deceased.

HOLLINGSWORTH, Justice.

This appeal presents an issue between two rival claimants to the proceeds of two policies of insurance issued by the Prudential Insurance Company of America on the life of John J. Gatewood, who, on September 23, 1956, died of accidental asphyxiation. The face of each of the policies was for $5,000, but each carried a provision that if death occurred by accidental means an additional benefit of $5,000 would be paid to the beneficiary therein named. Each policy also invested the insured with the privilege of changing the named beneficiary.

The insurer conceded the accidental death of the insured and its liability to the

extent of $10,000 under each policy. Upon the death of the insured, three rival claimants asserted themselves to be entitled to the proceeds of both policies, to wit: (1) Clarene Ware, a former wife of the insured; (2) N. Maxine Gatewood, the widow of the insured and administratrix c. t. a. of his estate; and (3) the Citizens Bank, Springfield, Missouri, as trustee of the proceeds of the policies. By an action of interpleader, the insurer was permitted to implead the three claimants as defendants and paid into court the sum of $20,000, plus accrued interest in the sum of $103.42. The three defendants, by separate answers, asserted their respective claims. The issues presented by the answers were tried by the court upon an agreed statement of facts, resulting in a decree directing that the net proceeds of the policies, $20,103.42, less attorney's fees in the sum of $150 and court costs, be paid to the Citizens Bank, Trustee, to be held by it in trust for Charles Robert Gatewood and Betty Kathryn Gatewood (minor children of the insured and his former wife, Clarene), "in accordance with the terms and provisions of the trust established in the Will of John J. Gatewood, deceased." Defendant N. Maxine Gatewood, Administratrix, appealed. Clarene Ware, former wife of deceased, did not appeal.

The two children of insured (and Clarene), to wit: Charles Robert and Betty Kathryn, were aged respectively thirteen and six years at the time of the death of insured. One of the policies, issued April 16, 1947, named the former wife, Clarene H. Gatewood, as beneficiary; the other, dated April 17, 1954, named Clarene H. Gatewood, wife of the insured, if living, otherwise Betty K. Gatewood, daughter of the insured, as beneficiary. On February 16, 1956, decedent and Clarene were divorced.

Prior to February 24, 1956, decedent conferred with one of the officers of the respondent Citizens Bank and inquired whether the bank "would be willing to serve as trustee for his children hereinabove mentioned and that said officer, acting on behalf of [the bank] replied in the affirmative." On February 24, 1956, the insured had a lawyer prepare and insured executed the will which was probated following his death.

Item One of the will directed the executor to pay all of testator's just debts, funeral and last illness expense. Item Two declared testator to be "divorced and unmarried" and that he had only the two children above named. Item Three directed payment from the corpus of the residuary estate of all taxes that should become payable with respect to his gross taxable estate. Item Four gave all of the rest, residue and remainder of the testator's estate to the trustee thereinafter named. The terms of the trust were set forth in meticulous detail. We need only state the general tenor thereof: They empowered and directed the trustee (1) to divide the residuary estate into two equal shares and to allocate one of said shares to each child; (2) to hold, manage, sell, invest and reinvest the assets of the estate; (3) to pay the net income from the share of each child to that child until he or she attained the age of 25 years and to encroach upon the principal in behalf of either child, if in the discretion of the trustee his or her needs required. When each child attained the age of 25 years, the trustee was directed to pay such share, together with all accrued and unpaid income, to such child, and the trust terminated. In the event of certain contingencies therein set forth (such as the death of either or both children before or after the death of testator and prior to attaining the age of 25 years), the trustee was given specific directions as to disposition of the share or shares of such child or children. Item Seven provided: "I nominate, constitute and appoint the Citizens Bank, a banking corporation of Springfield, Missouri, to be Executor of and trustee under this will, * * *."

On or about the first day of March, 1956, the insured, in writing, through the representative of the insurer in Springfield,

Missouri, made application to the insurer, requesting that the named primary beneficiary in each of the policies be changed to "Citizens Bank, Trustee of Estate of John J. Gatewood", at which time he delivered to the insurer's representative both policies. The insurer did not make changes requested, but instead requested the insured to execute his request for such changes on forms furnished by the insurer different from the forms furnished him when he made the original request.

On April 15, 1956, the insured and appellant were married.

On July 14, 1956, the insured, as requested by the insurer, executed the new forms furnished him, again requesting that the proceeds be paid to "Citizens Bank, Trustee of Estate of John J. Gatewood." The latter requests were duly received by the insurer, but the insurer again requested more specific information as to the requested change of beneficiary, to wit: the date of the instrument creating the trust and permission to see the same. The insured died, as stated, September 23, 1956, without having complied with the insurer's last request and the change of beneficiary was never endorsed on the policies, both of which still remained in possession of insurer. However, no contention is made that the insured, by executing the requests for change of beneficiary furnished by the insurer, did not effectively accomplish such change. Persons v. Prudential Insurance Co. of America, Mo., 233 S.W.2d 729, 732.

The Citizens Bank refused to act as executor of the estate of the insured, and, on September 28, 1956, the appellant was appointed and duly qualified as administratrix c. t. a. On October 25, 1956, appellant, as administratrix, and the Citizens Bank, as trustee aforesaid, jointly furnished the insurer with proofs of death of the insured, wherein they claimed to be the beneficiaries of said policies. On November 1, 1956, Clarene Ware also furnished the insurer with proof of death of insured and claimed herself to be the beneficiary of both policies.

The last settlement filed in the probate court by appellant, as administratrix, showed assets of the estate of the insured, not including the policies, in the amount of $6,451.65, which, exclusive of the policies, are insufficient to pay the demands on file "together with statutory administratrix and attorney fees and probate costs."

Upon appeal to this court, appellant asserts and briefs four points:

(a) By naming the Citizens Bank, trustee of estate of John J. Gatewood, as beneficiary in the policies the decedent-insured made the proceeds thereof a part of the assets of his estate;

(b) The object of the testator-insured's bounty is of no significance in determining his intention;

(c) If any inter-vivos trust was created (appellant concedes that technically there was), such trust was dry and the policy proceeds should be paid over to the estate; and

(d) The case of Tootle-Lacy National Bank v. Rollier, 341 Mo. 1029, 111 S.W.2d 12, (upon which it seems to be conceded the trial court based its decree) is not in point.

The respondent bank insists, to the contrary of each of the points urged by appellant, that the insured intended to and did create a trust for the exclusive benefit of his children separate and apart from his estate and free from claims of creditors or statutory allowances to his widow; that the trust, by correlation to the purposes and subject matter of the trust created in the will, was active and lawful and not subject to the claims of creditors or statutory allowances to the widow as a part of the estate; and that the Tootle-Lacy case, supra, is direct and controlling authority under the facts herein presented.

Appellant's argument runs this wise: That inasmuch as the will of the insured directed the payment of his debts, funeral expenses, taxes, etc., named the bank as his executor, and directed the bank to establish a trust fund in the assets remaining in his residuary estate, it is manifest that testator-insured *intended* there should be statutory administration of *all* of his assets, including the policy ,proceeds, and that the trust fund for the benefit of his children should be limited to the assets remaining after payment of costs of administration, payment of debts and statutory allowances to the widow; and that there is no basis in the record for an inference that the insured testator, by designation of the bank as "trustee of estate of John J. Gatewood" as beneficiary of the insurance policies intended to create a separate and distinct inter-vivos trust apart from the testamentary trust provided in the will.

In support of that contention, appellant cites Prudential Insurance Company of America v. Bloomfield Trust Company, 1929, 104 N.J.Eq. 372, 145 A. 735, 736; Stalder v. Pacific National Bank, 28 Wash. 2d 638, 183 P.2d 793, 797; Aultman v. Meyers, 239 Iowa 940, 33 N.W.2d 400, 401, 403–404. The Stalder and Aultman cases, although announcing the general rules as declared in the Prudential case, supra, deal with facts and issues so essentially different from those involved in the instant case that we need not discuss them. Appellant places such strong reliance upon the Prudential case that we shall set forth at some length the facts and law therein stated. In that case, Prudential, on March 30, 1926, issued a $10,000 life insurance policy to one Lockwood, payable to his wife. On May 22, 1926, Lockwood changed the beneficiary to Bloomfield Trust Company, as "beneficiary trustee". On June 7, 1926, Lockwood made his will wherein, after directing payment of debts, he gave his residuary estate to Bloomfield Trust Company, in trust for his widow for life, remainder to his three infant children, and delivered the will

and policy to the trust company for safe-keeping, without explanation. The court held that although the trust failed for indefiniteness, the title to the trustee did not fail, and directed the trustee to pay the fund to the executor of the estate. In so deciding, the court, 145 A. loc. cit. 736, said:

"The power reserved to the insured was effectively exercised in favor of the trustee. That the trust was not declared is no concern of the wife. The designation of the wife as beneficiary was revoked, and her rights in the policy were lost to her, when the insured exercised the power, and by the prescribed method made it payable to the trust company as trustee. The transfer was complete, and the wife's interest at an end, and the right of beneficiary passed to the trustee though the trust upon which the trust company held was deficient. Upon an imperfect trust the law raises a resulting trust, * * * to the use of the donee of the power, * * * unless the fund is otherwise disposed of by the settlor, upon default of appointment. * * * The trust company contends that the joint deposit of the policy and the will, and the reading of them in the light of each other, discloses for whose benefit the trust fund was to be held. The delivery of the policy and the will into the care of the trust officer, without even a hint that they were interrelated, indicates that his services were purely custodial. That the trust company was named trustee in the policy and trustee in the will does not correlate the trusts. And upon a perusal of the two documents it is at once apparent that the respective trusts have neither common purpose nor common subject. The policy is silent as to the beneficial use, and the will makes no mention of the policy. The fund held in trust under the will is confined to the testator's residuary estate; the policy is not part of the estate. The contract of the insurance company was to pay to the designated beneficiary. The insured had only power to select and appoint the beneficiary. * * * The testamentary trust furnishes no index to the undeclared trust of the pol-

icy, nor does the will operate as a testamentary disposition of the policy. * * * The trusts are exclusive, each of the other. Together they do not declare the trust."

We think that case is distinguishable on its facts. When the testator in that case executed the change of beneficiary in the insurance policy from his wife to the trust company, he effectively revoked her rights to the proceeds of the policy. And, although by designation of the trust company as "beneficiary trustee" title to the proceeds vested in the trust company as trustee, the trust, standing alone, was held to be so imperfectly defined as to make it impossible of execution; and, inasmuch as there was neither common purpose nor common subject in the two, they could not be correlated. In the instant case, the naming of the bank as *"trustee of estate of John J. Gatewood"* as beneficiary of the policies, we think, so correlated the trust designated in the requests for change of beneficiary in the insurance policies as to admit of reference to the trust created in the will for determination of the powers and duties of the bank as trustee of the proceeds of the policies.

The fact that the insured changed the beneficiary in the policies to the bank as *"trustee* of estate of John J. Gatewood" rather than to the bank as *executor* of estate of John J. Gatewood, in and of itself, literally, and, when correlated and construed in connection with the trust under the will, we think, clearly warrants a finding that the insured intended that the bank, *as trustee*, take the proceeds of the policies and hold them in trust for the use and benefit of the children, separate and apart from his estate. Had he desired that the proceeds of the policies be first administered as a part of his estate, such desire could easily have been effected by making the proceeds payable to his estate.

Appellant further contends, however, that the insured was a layman unfamiliar with the legal distinction between the terms "executor" and "trustee". There is nothing in the record to support that contention. In this connection, it is worthy of note that appellant concedes the manifest intention of the insured was that his children were to be the ultimate beneficiaries of the proceeds of the insurance policies regardless of whether they were a part of the estate or the corpus of a separate and distinct trust, but says that the "question is not who was to benefit, but rather, by what legal means did the testator intend that the policy proceeds should be administered"; and that, in designating the bank as "trustee of estate of John J. Gatewood" as beneficiary, the insured, in effect, named his estate as beneficiary. We cannot agree with that conclusion.

■ Not only did the change of beneficiary to the bank as *trustee* (not as *executor*) negative any intention that the estate should be the beneficiary of the proceeds of the policy, but likewise so did his inquiry to the bank (made prior both to execution of his will and prior to his first request for change of beneficiary) as to whether the bank "would be willing to serve as trustee *for his children*" negative such a contention. In addition to these circumstances, the second request for a change of beneficiary to the bank *as trustee*, made after the marriage of insured to appellant, was identical in form to the request concededly made when he, by the recitals in his will clearly intended the trust therein created to be solely for the benefit of his children. Had he intended otherwise, surely he would have so stated. We must assume insured knew (as practically every adult knows) that if the proceeds of his policies went to his estate, his wife would take a portion thereof. Precisely so, says the appellant, with the further insistence that any "attempt on the part of the testator, by means of an inter-vivos conveyance, as here, without consideration, is a fraud upon such widow", citing Merz v. Tower Grove Bank & Trust Co., 344 Mo. 1150, 130 S.W.2d 611, 617 [4]; and In re Kenin's Trust Estate, 343 Pa. 549, 23 A.2d 837, 840. The trouble with that contention is two-

fold: (1) The answer upon which appellant sought to recover the proceeds of said policies pleads no such ground; and (2) the ·policies of insurance were procured, the major portion, if not all, of the premiums was paid prior to the marriage of insured to appellant, and the proceeds thereof at all times were payable to beneficiaries other than the estate. Consequently, they never vested in ·or became assets of the estate, *unless they so became by virtue of the change of beneficiary therein to the bank as ·"trustee of estate of John J. Gatewood"*. See Sternberg v. Levy, 159 Mo. 617, 60 S.W. 1114, 53 L.R.A. 438; Continental Casualty Co. v. Pleitsch, Mo.App., 111 S.W.2d 956, 959; John Hancock Mut. Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57, 61–62; Postal Life & Casualty Co. v. Tillman, Mo.App., 287 S.W.2d 121.

Not even appellant contends that the insured ever *intended* that any person, other than his children, share as a beneficiary in such funds. Actually, the effect of her contention is that despite insured's belief and intention, he, nevertheless, made the proceeds of the policies payable to his estate. The essential question is, therefore, shall the intention of the insured be thwarted upon the ground that the trust must fail because the purpose cannot be ascertained, or are there other facts and circumstances in the case whereby its purpose can be ascertained and it may be made operative in the manner intended by the insured?

■ An express trust in personalty may be shown by express declarations and also by surrounding circumstances. Gwin v. Gwin, 240 Mo.App. 782, 219 S.W.2d 282, 285; Star-Times Publishing Co. v. Buder, Mo., 245 S.W.2d 59. "Equity needs only to ascertain the intention of the creator of the trust." Ramsey v. City of Brookfield, 361 Mo. 857, 237 S.W.2d 143, 145.

No particular words are required to create an express trust. In Stephenson v. Stephenson, 351 Mo. 8, 171 S.W.2d 565, 568, with support of numerous decisions, we said:

"Nor is it necessary that the declaration of such a trust be contained in the instrument which transfers the legal title. The trust may be set out in one or several instruments executed at other times than that of the transfer of title, provided they show the existence of the trust when construed together."

The case of Tootle-Lacy National Bank v. Rollier, supra, 341 Mo. 1029, 111 S.W.2d 12, 13, is analogous and in point on that question, as presented by the facts in the instant case. In the Tootle-Lacy case, Edward Rollier and Emma Rollier were husband and wife. Edward carried policies of life insurance in the amount of $10,000, in which Emma was the beneficiary, with the right reserved to the insured to change the designated beneficiary. In 1930, Emma became hopelessly insane and was committed to a hospital for the insane. Shortly thereafter, Edward changed the beneficiary in all of the policies, designating the bank as trustee. The endorsements did not specifically designate the beneficiary of the trust or declare the terms and conditions thereof. In 1934, Edward executed a will.

"Having first directed payment of debts and funeral expenses, he made one bequest, that of $6,000 to Mary E. Schelhamer 'together with all' of his 'jewelry and personal effects,' adding, 'This bequest is made to compensate the said Mary E. Schelhamer for services rendered to me and my family.' The residuary estate is then put in trust for 'the use and benefit of my wife, Emma E. Rollier,' the 'income therefrom, or in case of necessity, any part of the principal thereof' to be used by the trustee 'for the proper maintenance and support of my said wife, Emma E. Rollier, so long as she may live' and upon her death the trust to 'cease and determine and said trustee after the payment of the funeral expenses of my said wife shall pay over and deliver to my son, Edward Franklin Rollier,' the property remaining 'to be his property absolutely.' The Tootle-Lacy National Bank is named as trustee of this testamentary trust and is also made executor of the will. Edward

W. Rollier died September 17, 1934, and the will of June 21, 1934, supra, was admitted to probate as his last will and testament. The Tootle-Lacy National Bank qualified as executor. The record herein does not disclose what money or property Rollier possessed at the time that he made the will, * * * but it does appear that after payment of the funeral expenses and costs of administration but little will be left in the hands of the executor and the net estate wholly insufficient to pay the $6,000 bequest to Mary E. Schelhamer. * * *

"Mary E. Schelhamer's position is that the indorsements on the insurance policies, whereby the bank was made trustee-beneficiary, 'created no trust for any object or in favor of any beneficiary and wholly fail as beneficial trusts,' and that having 'failed to create an effectual and enforcible express trust,' a resulting trust in the proceeds of the life insurance policies arose in favor of the donor and 'hence his legal representative,' that is, a trust resulted to the bank as executor and the proceeds of the life insurance policies became assets of the estate and should be administered upon by the bank as such in its capacity as executor and applied first to the payment of the $6,000 bequest to her. * * * The bank took the position that the wording of the beneficiary provisions indorsed on the insurance policies, which we presently set out, was not only such as to manifest a dominating intention to create a trust of some sort in the proceeds of the policies, but also, by explicit reference to a trust to be created in the will, and the surrounding circumstances, to sufficiently make out an express trust as to the proceeds of the policies for the same term, upon the same conditions and with the same beneficiary, as that created by the will."

The policies were in two different companies and the provisions relating to change of beneficiary were somewhat different in wording but not in their intent. Their substance was that if Emma survived the insured and the will of insured had been admitted to probate and there was a trust operating under said will, the net proceeds of the policies should be paid to the Tootle-Lacy National Bank, or its successors, as trustee; otherwise, the proceeds were to be paid to his estate.

In construing the legal effect of the facts above stated, the court, 111 S.W.2d loc. cit. 17, concluded:

"It is clear in the light of his subsequent acts that Rollier did not intend that the proceeds of these policies should pass under his will as part of his estate if his wife survived him. Had he so intended would he not have made them payable directly to his personal representative or his estate? The policies were payable 'to the trustee under the last will and testament of the insured.' The plaintiff was made trustee in the trust created by the will and therefore the policies were payable to it as trustee. Guided by a reasonable construction and interpretation of the language used, considered in the light of the surrounding facts and circumstances, heretofore mentioned, we think it a reasonable conclusion that Rollier intended that a trust of the same kind and character and on the same conditions as that declared in the will should apply to the proceeds of these policies. In other words, the trustee in the trust created in the will, to whom the proceeds of the policies are payable in trust, was vested by the will with certain powers and responsibilities and when that provision of the will, to which reference is made, in general terms, in the indorsements, is read in connection with the indorsements, the terms of the trust therein created are, we think, sufficiently made to apply to and to cover the policies, and the uses for which the trustee bank takes, holds and administers the proceeds of the policies payable to it in trust, and its duties and responsibilities as to such trust, are fixed and determined as was done by the trial chancellor, by reference to the trust created by the will."

■ The desire of the insured in the instant case to provide for his dependent minor children is reasonably analogous to

the desire of the insured in the Tootle-Lacy case to provide for his insane wife. We think the designation of the bank as trustee *"of the estate of John J. Gatewood"* had a purpose and, having decided it was not to name the estate as beneficiary of the funds, we are forced to the conclusion that the purpose was to incorporate by reference the terms and provisions of the trust created by the will as the terms and provisions by which the trust created in the proceeds of the policies was to be administered for the exclusive benefit of the children.

The judgment is affirmed.

All concur.